PEOPLE *v.* HENNARD.

1. ASSAULT AND BATTERY—CRIMINAL LAW—EVIDENCE.

Where respondent was charged with assault with intent to do great bodily harm, less than murder, upon the person of his infant son, and the injuries and attendant circumstances, taken with admissions of the boy at the time, tended to prove the crime, the case was one for the jury, even though the son testified that he might have been kicked by a horse.

2. EVIDENCE—CRIMINAL LAW—RES GESTÆ.

What the boy said to a minister, to whose house he fled from the place of the assault, concerning the cause of his injuries, was competent as a part of the *res gestæ*.

3. SAME.

Evidence as to the appearance of the barn, the curry comb, and the wounds, was admissible as tending to show whether or not the injury was produced by a horse.

4. SAME—LEADING QUESTIONS.

In the discretion of the circuit judge, leading questions may be properly put to hostile witnesses of the prosecution by the prosecutor.

Exceptions before judgment from Bay; Collins, J. Submitted April 21, 1910. (Docket No. 138.) Decided July 14, 1910.

Joseph Hennard was convicted of an assault with intent to do great bodily harm less than the crime of murder. Affirmed.

*Pierce & Kinnane*, for appellant.

*John E. Bird*, Attorney General, and *Charles W. Hitchcock*, Prosecuting Attorney, for the people.

STONE, J. The respondent was charged in the information with having, on the 18th day of March, 1909, in the county of Bay, made an assault upon Wilfred Hen-

nard with intent to do him great bodily harm less than the crime of murder. The trial resulted in the conviction of the respondent of the offense charged. The case is here upon exceptions, and there are a number of assignments of error.

The principal point urged by respondent's counsel is that the evidence did not warrant the trial court in submitting the case to the jury. It was claimed that the assault was committed in the barn of one Mrs. Walthy Tibado, who kept a general merchandise store at Fraser Center, in whose home Wilfred Hennard was living, and that the respondent was stopping there at the time of the alleged assault. The boy Wilfred was in the barn taking care of the horses between 9 and 10 o'clock of the morning in question. The father, the respondent, was there with him.

One cannot read the record without being impressed by the fact, as undoubtedly the trial court was, that the boy, Wilfred Hennard, and Mrs. Tibado, sought to shield the respondent, and that they were very reluctant to testify against him. The case is an unusual one. The father and son were alone in the barn. The boy received a blow or blows upon the head described by the physician as follows:

"I found one cut on the right side of the forehead, just outside the eye, pretty near on the temple and just in front of the temple bone. It was more on the frontal bone. There were three other cuts on the top and back part of the head. One was on the top, and the others were back. The top one was not bad. It was really a bruise. The other was cut down to the bone so that it was necessary to put a stitch in it. After stitching the wound, stitching this one, I noticed the blood coming from the wound. He blew his nose, and I noticed that the air came from this, so that there was, must have been, a puncture and wound of the bone at that point. * * * The finger of one hand—the nail was crushed and the finger crushed. There were some other small scratches on the head, but not of any significance."

The boy testified: That he was rendered unconscious; that after he came to he asked his father, the respondent, what was wrong, and he was standing very nearly in the same position as when the boy went into the barn. ·

" He didn't say nothing when I said, ' What is wrong? '

"*Q.* Why did you run over to the preacher's?

"*A.* Why, I don't know what struck me. I don't know whether it was my father, or whether it was a horse, or what it was. I don't know exactly what struck me, and I imagined at that time it was him struck me, but since I realize that it might have been the horse as well as my father.  *  *  *  I recall going over to the preacher's. I ran over there, I guess. As I ran over I was hurt and bleeding. The preacher met me before I got to the house, and when I got there I sat down in a chair, and he washed my head off. Then he took me upstairs and laid me down on the couch.

"*Q.* Did you say anything to the preacher when you went over there ?

"*A.* Why, yes; I told him—he asked me what was wrong, and I told him I thought my father struck me, and I told him my father struck me, as near as I could think at that time. I couldn't say how it was."

He further testified that when he gained consciousness he said: "Don't, father. Oh!"

Mrs. Tibado testified that she heard the boy's outcry and started for the barn, and met the respondent coming from the barn.

"*Q.* What did he say to you ?

"*A.* I could not tell what he said to me.

"*Q.* What is your best recollection of what he said ?

"*A.* He said something about Wilfred being hurt; but I would not attempt to swear whether—to just what he said or how he said it."

After giving a number of evasive answers, she testified to going to Mr. Butler's, the minister's, and finding Wilfred there; how the physician was called, the wounds dressed; and she remained there caring for him from Saturday, the day of the injury, until the following Thursday.

While the boy was being cared for, the respondent hitched up a horse and buggy and went away in the direction of Linwood, and sent the horse and buggy back. This was very remarkable conduct for the father of a boy who had been severely injured by the kicking of a horse, if everything was pleasant between them, as is claimed. The fact that the father and son were alone together when the boy was injured, in an unusual manner, coupled with the conduct of the father after the injury, leads the mind of an unprejudiced person to believe that these witnesses suppressed the truth when they testified that there had been no trouble, and that everything was of the pleasantest nature. Whether there was an assault, and, if so, who made it, and with what intent, were questions for the jury. The court did not err in overruling the respondent's motion to direct a verdict of not guilty as claimed in the first assignment of error.

There was no error, as claimed, in the second and third assignments, in receiving and refusing to strike out the testimony of Wilfred as to what he said to the preacher, and what he said to respondent when he was struck. They were part of the *res gestæ* within our repeated decisions.

The assignments of error relating to leading questions are without merit. The record shows that respondent's counsel had stated to the court that he had advices that Mrs. Tibado and the son did not desire to urge the prosecution, and there was enough in the conduct of these witnesses to warrant the allowing of leading questions, in the discretion of the court.

There was no error permitting evidence relating to the appearance of the barn, the curry combs, and of the wounds upon Wilfred's head. The location and appearance of the wounds were pertinent as bearing upon the question whether they had been inflicted by the horse, or not, as claimed.

The remaining assignments of error are, in our judg-

ment, without merit. Some of them are too general for consideration.

The charge of the court is criticised; but we think that it was fair, and covered the law of the case. As we have said, the case is unusual in many respects. The respondent and his son were alone together in a barn. The son receives a blow, or some external injury, is knocked senseless, is bruised, wounded, and his skull is fractured, and he is covered with blood. The nature of the injuries is such as to render it improbable that they were inflicted by the kick of a horse, as was claimed.

The father does nothing to relieve the son, but walks unconcernedly away, and soon leaves the vicinity. The son, instead of going to the home, goes to a neighbor's across the way, and there states that his father struck him. Because no third person saw the blows inflicted, it does not follow that all of the circumstances, taken together, may not be sufficient to warrant a jury, under the evidence, and in the exercise of their common sense, in saying that the respondent was guilty, notwithstanding the fact that the witnesses "did not desire to urge the prosecution."

We find no error in the record, and the conviction is affirmed.

OSTRANDER, HOOKER, MOORE, and BLAIR, JJ., concurred.